953 F.2d 552
 1992 A.M.C. 2408
 STEVEDORING SERVICES OF AMERICA, INC., formerly Seattle
Stevedore Company, a California Corporation,
Plaintiff-Appellee,
v.
Edward M. EGGERT; Jodi Eggert, his wife; and the marital
community composed thereof, Defendants-Appellants.
 No. 90-35015.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Nov. 5, 1990*.
Submission Deferred Nov. 6, 1990.
Resubmitted Nov. 16, 1990.
Decided Jan. 9, 1992.
As Amended April 20, 1992.
 
 Craig R. Elkins, Bellevue, Wash., James R. Walsh, Lynnwood, Wash., for defendants-appellants.
 Richard Martin Slagle, Williams, Kasner & Gibbs, Seattle, Wash., for plaintiff-appellee.
 Joshua T. Gillelan II, Office of Solicitor, U.S. Dept. of Labor, Washington, D.C., for Director of Dept. of Labor's Office of Workers' Compensation Programs, as amicus curiae.
 Appeal from the United States District Court for the Western District of Washington.
 Before TANG, O'SCANNLAIN and LEAVY, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 Edward M. Eggert ("Eggert") appeals the district court's order granting summary judgment in favor of Stevedoring Services of America, Inc. ("Stevedoring"). Eggert alleges that the district court lacked subject matter jurisdiction to decide this case. Specifically, Eggert contends that the district court erroneously implied a federal cause of action under the Longshore Harbor Workers' Compensation Act ("LHWCA" or "Act") for recoupment of alleged overcompensation paid to Eggert. We agree with Eggert that the district court lacked subject matter jurisdiction and therefore we reverse and vacate the judgment below.
 
 Background Facts and Procedural History
 
 2
 Eggert was injured several times in 1978, 1979, and 1980. On January 26, 1980, he was injured while working for Stevedoring. On July 14, 1981, an administrative law judge ("ALJ") awarded Eggert disability pay under the LHWCA pursuant to 33 U.S.C. § 919(c), (d). The ALJ awarded Eggert $380.78 per week from December 6, 1980, through the date of the order. The order further provided for the continuation of payments to retrain Eggert.
 
 
 3
 Stevedoring appealed the 1981 order and moved for reconsideration. On July 12, 1985, the Benefits Review Board ("BRB") vacated the 1981 Order and remanded the case for reconsideration of whether Stevedoring was liable for Eggert's injury and whether the injury was permanent.
 
 
 4
 On remand, Stevedoring introduced additional evidence. The ALJ preliminarily noted that Eggert had concealed income that he had received at the same time he was receiving compensation benefits. The ALJ further noted that Eggert had misrepresented his medical condition to the doctors evaluating him, which affected their diagnosis of his condition. The ALJ, however, did conclude that Eggert's claim for benefits did have some legitimacy, stating that:
 
 
 5
 Claimant has objective evidence of degenerative disk disease, and did suffer the injuries claimed. It is not unreasonable for him to have assumed that his inability to perform longshore work from January, 1980 through July, 1980, and again after December 6, 1980, was due, at least in part, to his various industrial accidents.... I decline to award [Stevedoring] costs under section 26 of the [LHWCA].
 
 
 6
 The ALJ then turned to the issues submitted to him on remand from the BRB. The ALJ ruled that two non-industrial accidents were separate and intervening causes of Eggert's disability. Consequently, on March 9, 1987, the ALJ ordered that Stevedoring was only liable to pay Eggert compensation for the period January 26, 1980, through April 15, 1980. The ALJ further held that Stevedoring was entitled to a credit for all sums after April 15, 1980.
 
 
 7
 Neither Eggert nor Stevedoring appealed the 1987 order. In a subsequent order, the ALJ awarded Stevedoring an attorney's fee of $60 against Eggert as a sanction for having made proceedings to compel discovery necessary.
 
 
 8
 On February 23, 1989, Stevedoring filed a complaint in United States District Court for the Western District of Washington to recover alleged overpayment of disability benefits paid to Eggert. Because Stevedoring had continued to pay Eggert disability benefits up until the issuance of the March 1987 order, Stevedoring claimed that Eggert had been overpaid $96,651.55 in compensation. The parties brought cross-motions for summary judgment. The court granted Stevedoring's motion and ordered Eggert to reimburse Stevedoring $96,651.55, plus interest, for the excess payments. Eggert appeals.[1]
 
 Standard of Review
 
 9
 The existence of subject matter jurisdiction is a question of law reviewed de novo. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). The district court's factual findings on jurisdictional issues must be accepted unless clearly erroneous. Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir.1989).
 
 Discussion
 I. SUBJECT MATTER JURISDICTION
 A. Statutory Jurisdiction
 
 10
 Federal courts are courts of limited jurisdiction. "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." Stock West, 873 F.2d at 1225. The district court ruled that it had federal question jurisdiction, 28 U.S.C. § 1331, because Stevedoring's action was fundamentally a suit to enforce an administrative order of the ALJ.
 
 
 11
 Under the LHWCA, federal district courts have jurisdiction to enforce certain ALJ orders. First, they have jurisdiction under 33 U.S.C. § 921(d), to enforce any order awarding workers' compensation.[2] Second, they have jurisdiction under 33 U.S.C. § 918(a) to enter judgment on an administrative supplementary order that declares an amount of default by an employer in a compensation award.[3] Both of these provisions concern employers who are in default in payment of a compensation award and are thus inapplicable here.
 
 
 12
 Finally, pursuant to 33 U.S.C. § 927(b), the district courts may punish as contempt of court any disobedience or resistance to a lawful order or process issued in the course of administrative proceedings under the Act.[4] Importantly, this provision relates to all persons in proceedings under the Act. A direct order of an ALJ to a claimant can be compelled by the district court using the means available for punishing contempt. In conjunction with these grants of jurisdiction, the Act also requires that proceedings for suspending, setting aside, or enforcing a compensation order, whether rejecting a claim or making an award, shall not be instituted otherwise than as provided by 33 U.S.C. §§ 918 and 921. 33 U.S.C. § 921(e).
 
 
 13
 The district court held that it had jurisdiction because it was enforcing the ALJ's administrative order. While there may have been jurisdiction pursuant to 33 U.S.C. § 927(b) if the ALJ had issued a direct order to Eggert to pay Stevedoring a sum certain, the March 1987 order did not do this. The order merely provided Stevedoring a credit for payments previously made. It would be inconsistent to award the allowance of a credit and concurrently to give Stevedoring an award of reimbursement. Because Stevedoring's complaint was not an action to enforce compliance with a direct order of the ALJ, there is no jurisdiction under section 927(b). As there are no other statutory provisions under the LHWCA authorizing the district court's jurisdiction, see 33 U.S.C. § 921(e), we are as yet unable to find a basis for federal jurisdiction.
 
 B. Implied Cause of Action Under the LHWCA
 
 14
 The district court also ruled that Stevedoring had an implied cause of action under the LHWCA. The district court reasoned that there was nothing in the Act which precluded Stevedoring from being reimbursed for an alleged overpayment of compensation benefits.
 
 
 15
 In Sample v. Johnson, 771 F.2d 1335, 1344-47 (9th Cir.1985), cert. denied, 475 U.S. 1019, 106 S.Ct. 1206, 89 L.Ed.2d 319 (1986), we considered whether to imply a cause of action under the LHWCA in a different context.[5] Our reasoning in Johnson is instructive here. Quoting Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 625, 98 S.Ct. 2010, 2015, 56 L.Ed.2d 581 (1978), we reiterated that " '[t]here is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted.' " Johnson, 771 F.2d at 1345-46. Thus, our preeminent inquiry is whether Congress has specifically enacted LHWCA provisions that regulate the ability of an employer to recover overpayments of compensation from claimants.
 
 
 16
 Contrary to the judgment of the district court, we hold that the Act does regulate the ability of employers to recoup alleged overcompensation from claimants. Because Congress has not been silent concerning the availability of an appropriate remedy under the LHWCA, the district court erred in holding that the Act did not preclude Stevedoring's implied cause of action under the LHWCA for repayment of alleged overcompensation from the claimant.
 
 
 17
 The LHWCA contains three provisions dealing with payments in excess of what is later determined to have been due. First, "[i]f the employer has made advance payments of compensation, he shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due." 33 U.S.C. § 914(j). This section allows the employer a credit for its prior payments of compensation against any compensation subsequently found due. See Phillips v. Marine Concrete Structures, Inc., 877 F.2d 1231, 1234 (5th Cir.1989), reinstated in relevant part, 895 F.2d 1033, 1036 (5th Cir.1990) (en banc). Section 914(j) aims at reimbursing an employer for the amount of its advance payments, where these payments were too generous, for however long this takes, out of unpaid compensation found to be due. Tibbetts v. Bath Iron Works Corp., 10 Ben.Rev.Bd.Serv. (MB) 245, 249 (1979), cited in Phillips, 877 F.2d at 1234. However, section 914(j) also shows a congressional recognition that there might not be "any" unpaid installment to recover. Ultimately, this section does not provide an employer with a right of repayment for alleged overpayment of compensation. See Henry v. Gentry Plumbing & Heating Co., 704 F.2d 863, 865 (5th Cir.1983) (stating that it was the intent of Congress that "an injured worker receive regular compensation, even that [is] later determined to have been wrongly exacted and [is] not recoverable by the payer, [rather] than that he be left without assistance until all amounts are finally determined"); Cf. Massey v. Williams-McWilliams, Inc., 414 F.2d 675, 679-80 (5th Cir.1969) (holding that, where employer had erroneously paid benefits to seaman under the LHWCA, but was liable to the seaman under the Jones Act, 46 U.S.C.App. § 688, employer would not be entitled to repayment of the compensation benefits but would be entitled to a credit against those items of damages ultimately allowed which bore a reasonable relationship to items of loss compensated by the LHWCA), cert. denied, 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681 (1970).
 
 
 18
 Second, section 922 provides for review of a compensation order by an ALJ and authorizes issuance of a new order "which may terminate, continue, reinstate, increase, or decrease [the] compensation" previously ordered, "on the ground of a change in conditions or because of a mistake in a determination of fact" in the original award. 33 U.S.C. § 922. The statute then states that:
 
 
 19
 Such new order shall not affect any compensation previously paid, except that an award increasing the compensation rate may be made effective from the date of the injury, and if any part of the compensation due or to become due is unpaid, an award decreasing the compensation rate may be made effective from the date of the injury, and any payment made prior thereto in excess of such decreased rate shall be deducted from any unpaid compensation, in such manner and by such method as may be determined....
 
 
 20
 Id. Although the facts of our case do not involve a modification hearing before the ALJ,[6] we consider section 922 to see if it limits the ability of an employer to recover overpayments of compensation pursuant to a compensation order under the LHWCA. We conclude that section 922 does limit employer remedies. The provision clearly states that any new order issued "shall not affect any compensation previously paid ... and any payment made prior thereto in excess of [a] decreased rate shall be deducted from any unpaid compensation...." Id. (emphasis added). The modification provision does not provide for recovery of alleged overpayments by means of repayment by the employee but only provides the employer with a credit against prospective disability compensation payments. Bethlehem Shipbuilding Corp. v. Cardillo, 102 F.2d 299, 302 (1st Cir.) ("In other words the [employer] in no case receives back any compensation previously paid but may have prior excess payments credited or allowed upon a present award, future awards, or any prior unpaid award...."), cert. denied, 307 U.S. 645, 59 S.Ct. 1042, 83 L.Ed. 1525 (1939).
 
 
 21
 Finally, a third provision dealing with this issue is section 908(j), which provides:
 
 
 22
 (1) The employer may inform a disabled employee of his obligation to report to the employer ... any earnings from employment or self-employment ...
 
 
 23
 (2) An employee who--
 
 
 24
 (A) fails to report the employee's earnings under paragraph (1) when requested, or
 
 
 25
 (B) knowingly and willfully omits or understates any part of such earnings,
 
 
 26
 and who is determined by the deputy commissioner to have violated clause (A) or (B) of this paragraph, forfeits his right to compensation with respect to any period during which the employee was required to file such report.
 
 
 27
 (3) Compensation forfeited under this subsection, if already paid, shall be recovered by a deduction from the compensation payable to the employee in any amount and on such schedule as determined by the deputy commissioner.
 
 
 28
 33 U.S.C. § 908(j). The statutory scheme in section 908(j) for recovery of overpayments clearly does not authorize an action against the claimant for repayment; it contemplates only a suspension of prospective compensation benefits. Plainly, the statute envisions an employee's underreporting of income, exactly the situation the ALJ found in this case. The remedy provided is not a federal cause of action for repayment but deduction from prospective compensation payments. See Freiwillig v. Triple A South, 23 Ben.Rev.Brd.Serv. (MB) 371, 374-75 (1990) (stating that the penalty for willful concealment of post-injury earnings is suspension of benefits pursuant to § 908(j), and that a claimant, pursuant to 33 U.S.C. § 931, may be found guilty of a felony for knowingly and willfully making a false statement for the purpose of obtaining a benefit under the Act).
 
 
 29
 In conclusion, taken together, these three provisions convince us that Congress did not intend to permit an employer a federal cause of action against a claimant for repayment of alleged overpayments of compensation. Although Congress did not expressly preclude an employer action for repayment, its intent on this issue is understood by the express provisions we have examined. We will not rewrite or engraft new remedies upon the provisions Congress has affirmatively and specifically enacted. The district court erred in holding that Stevedoring had an implied remedy under the LHWCA. Because Stevedoring's federal claims for recoupment are without merit, the district court lacked jurisdiction to entertain them.
 
 C. Pendent Jurisdiction
 
 30
 The ALJ, on May 19, 1987, ordered Eggert to pay Stevedoring $60 for abuse of the discovery procedures during the administrative proceedings. We agree with the Director, Office of Workers' Compensation Programs, as amicus, that the federal district court had jurisdiction to compel Eggert's compliance with the ALJ order. See 33 U.S.C. § 927(b). With this basis for federal jurisdiction, Stevedoring claims that the district court should exercise pendent jurisdiction over the state common law claims set forth in the complaint. These claims represent additional efforts to recover overpayments of compensation.
 
 
 31
 Pendent claims must derive from a nucleus of operative fact held in common with claims for which there is an independent basis for federal jurisdiction, and they must be such that they ordinarily would be expected to be tried in a single proceeding with the federal claims. S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1091 (9th Cir.1989). The claims at issue here, however, are independent of one another. Stevedoring's claim for enforcement of the May 19, 1987 attorney's fee order is quite distinct from Stevedoring's claim for recovery of alleged overpayments of disability compensation under state common law. Indeed, the state law claims substantially predominate over the narrow claim over which the district court has jurisdiction.[7] Cf. United Mine Workers v. Gibbs, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Consequently, pendent claim jurisdiction is not appropriate in this case.
 
 Conclusion
 
 32
 The district court erred in concluding that it had subject matter jurisdiction over Stevedoring's claim for repayment from Eggert of alleged overcompensation of disability benefits. However, the district court did have jurisdiction to enforce the May 19, 1987 ALJ order requiring Eggert to pay Stevedoring $60 in attorney's fees. We reject this limited grant of jurisdiction as a basis on which the district court may retain jurisdiction over the pendent state common law claims included in Stevedoring's complaint. Because these state common law claims are not retained, they must be dismissed, without prejudice, from Stevedoring's complaint.
 
 
 33
 Consequently, we vacate the judgment ordered in favor of Stevedoring. We remand this case to the district court for further proceedings, consistent with this opinion.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 [1]
 Although Eggert's notice of appeal was filed 33 days after the entry of the order granting summary judgment, Fed.R.App.P. 4(a)(2) treats this notice as having been timely filed immediately after the entry of final judgment, which was entered subsequent to Eggert's notice of appeal
 
 
 [2]
 33 U.S.C. § 921(d) provides:
 If any employer or his officers or agents fails to comply with a compensation order making an award, that has become final, any beneficiary of such award or the deputy commissioner making the order, may apply for the enforcement of the order to the Federal district court for the judicial district in which the injury occurred.... If the court determines that the order was made and served in accordance with law, and that such employer or his officers or agents have failed to comply therewith, the court shall enforce obedience to the order by writ of injunction or by other proper process, mandatory or otherwise, to enjoin upon such person and his officers and agents compliance with the order.
 
 
 [3]
 33 U.S.C. § 918(a) provides, in pertinent part:
 In case of default by the employer in the payment of compensation due under any award of compensation ... [and upon application, investigation, notice, and hearing] the deputy commissioner shall make a supplementary order, declaring the amount of the default.... The applicant may file a certified copy of such supplementary order with the clerk of the Federal district court.... [T]he court shall upon the filing of the copy enter judgment for the amount declared in default by the supplementary order if such supplementary order is in accordance with law.
 
 
 [4]
 33 U.S.C. § 927(b) provides, in pertinent part:
 If any person in proceedings before a deputy commissioner or Board disobeys or resists any lawful order or process, or misbehaves during a hearing ... the deputy commissioner or Board shall certify the facts to the district court having jurisdiction in the place in which he is sitting ... which shall thereupon in a summary manner hear the evidence as to the acts complained of, and, if the evidence so warrants, punish such person in the same manner and to the same extent as for a contempt committed before the court, or commit such person upon the same conditions as if the doing of the forbidden act had occurred with reference to the process of or in the presence of the court.
 
 
 [5]
 Specifically, the question at issue in Johnson was whether we should construe a private cause of action in favor of employees suing their employer for wrongful controversion of a workers' compensation claim. See 771 F.2d at 1337-38, 1346
 
 
 [6]
 Although Eggert had previously been awarded compensation under a 1981 ALJ order, the March 1987 ALJ order did not modify the earlier order, and therefore the 1987 order was not made pursuant to section 922. Instead, the BRB vacated the 1981 ALJ order and remanded the case to the ALJ for further findings. Furthermore, although the 1987 ALJ order cut off Stevedoring's disability compensation liability to Eggert earlier than the 1981 ALJ order, the ground of decision was not a mistake in fact, but the ruling that non-industrial injuries occurring after the industrial injury were separate and intervening causes of Eggert's disability
 
 
 [7]
 Whether there can be a state common law claim for recovery of alleged overpayments of disability compensation under the LHWCA is an open question in Washington, the state from which Eggert hails. See Todd Pac. Shipyards Corp. v. Gibson, 52 Wash.App. 653, 763 P.2d 206, 207 (1988). Although the question is not before us, it appears likely that Congress has expressed its intent to preempt state common law claims by employers against claimants for repayment of alleged overpayments of disability compensation