[No. 34313-1-I.    Division One.    January 17, 1995.]

STEVEDORING SERVICES OF AMERICA, INC., *Respondent*, v. EDWARD M. EGGERT, ET AL, *Appellants.*

*James R. Walsh*, for appellants.

*Rebekah Ruth Ross* and *Williams Kastner & Gibbs*, for respondent.

COLEMAN, J. — Edward M. Eggert and Jodi Eggert, a marital community, appeal the trial court's order granting summary judgment in favor of Stevedoring Services of

America, Inc. Eggert argues that the trial court improperly granted summary judgment because (1) it lacked subject matter jurisdiction, (2) federal law preempted Stevedoring's action, and (3) the doctrines of res judicata and collateral estoppel barred the action. We reverse.

Edward M. Eggert worked as a longshoreman. In 1980 Eggert made a claim for a back injury with Stevedoring[1] under the Longshore and Harbor Workers' Compensation Act (LHWCA), as amended, 33 U.S.C. § 901 *et seq.* Stevedoring paid Eggert compensation benefits pursuant to that claim. After several months, Stevedoring disputed Eggert's right to continued benefits. An administrative law judge (ALJ) for the United States Department of Labor conducted a hearing and ordered Stevedoring to continue to pay compensation benefits. Stevedoring appealed and, as required by the LHWCA, paid Eggert compensation benefits during the appeals process.

The benefits review board vacated the ALJ order and remanded for further findings. On remand, the ALJ found that Eggert had lied about his income and the extent of his disability in order to continue receiving compensation benefits. The ALJ stated Eggert had "absolutely no credibility" because he had repeatedly made false statements under oath, both on written forms and in his testimony at various hearings. The ALJ affirmed that Eggert was permanently totally disabled but then found that his condition was due to nonindustrial causes. On the basis of these findings, the ALJ ruled that Eggert was entitled to only 3 months' compensation for temporary disability, about $4,000 of over $100,000 paid by Stevedoring.

Under the LHWCA, advance payments made by an employer may be credited against any future amounts owed to the employee. 33 U.S.C. § 914(j). Although the ALJ granted Stevedoring credit for all amounts paid to Eggert, Stevedoring did not owe Eggert any unpaid compensation against which to apply this credit. Stevedoring did not ask the ALJ to

---

[1] At that time, Eggert was working for Stevedoring's predecessor in interest.

order Eggert to repay the amount of overcompensation, and neither party sought review of the ALJ's order on remand.

Stevedoring then brought suit in both state and federal court seeking to recover the approximately $96,000 overcompensation. The United States District Court for the Western District of Washington granted summary judgment in favor of Stevedoring. The Ninth Circuit Court of Appeals reversed and vacated that decision after finding that the federal court lacked subject matter jurisdiction. The Ninth Circuit also dismissed the state common law claims without prejudice. *Stevedoring Servs. of Am., Inc. v. Eggert*, 953 F.2d 552 (9th Cir.), *cert. denied*, 505 U.S. 1230, 120 L. Ed. 2d 922, 112 S. Ct. 3056 (1992) (*Eggert* I). Stevedoring then renewed state court proceedings, which had been held in abeyance pending disposition in federal court. Stevedoring moved for summary judgment under the doctrines of quasi-contract, conversion, fraud, and misrepresentation. The Superior Court granted Stevedoring's motion for summary judgment and ordered Eggert to repay the amount of overcompensation, with interest from the date of the final ALJ order. The Washington Supreme Court denied direct review.

■ ■ We consider whether the LHWCA preempts an employer's state common law action to recover overcompensation.[2] Under the supremacy clause of the United States Constitution, article 6, clause 2, state law that conflicts with federal law has no effect. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 120 L. Ed. 2d 407, 112 S. Ct. 2608, 2617 (1992). Any preemption analysis begins with the " 'basic assumption that Congress did not intend to displace state law.' " *Harris v. Department of Labor & Indus.*, 120 Wn.2d 461, 468, 843 P.2d 1056 (1993) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746, 68 L. Ed. 2d 576, 101 S. Ct. 2114 (1981)). Thus, a preemption analysis rests on the intent of Congress. *Cipollone*, 112 S. Ct. at 2617. Congress's intent may be expressly stated in the statute. In the absence of an express congres-

---

[2]We do not separately address Eggert's assertion that the trial court lacked subject matter jurisdiction because, in that contention, Eggert essentially argues preemption.

command, state law is impliedly preempted if it "actually conflicts with federal law . . . or if federal law so thoroughly occupies a legislative field ' "as to make reasonable the inference that Congress left no room for the States to supplement it." ' " *Cipollone*, 112 S. Ct. at 2617 (quoting *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 73 L. Ed. 2d 664, 102 S. Ct. 3014 (1982)). *See also Harris*, at 470-71.

If a federal statute contains an express preemption provision, a court generally need not resort to theories of implied preemption. As explained by the Supreme Court, when Congress has considered preemption and "included . . . a provision explicitly addressing that issue, and when that provision provides a 'reliable indicium of congressional intent with respect to state authority,' " a court should not consider implied theories of preemption. *Cipollone*, 112 S. Ct. at 2618 (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 505, 55 L. Ed. 2d 443, 98 S. Ct. 1185 (1978)).

Eggert and amicus[3] argue that the LHWCA occupies the field and thus preempts Stevedoring's state common law claims for repayment of disability compensation. Specifically, Eggert contends that certain LHWCA provisions, which call for overcompensation to be credited against any future benefits, constitute the exclusive means of recovering overpayment and that Congress intended to supplant any state common law remedies with these provisions. Stevedoring counters that no federal preemption occurs because the LHWCA's preemption provisions do not expressly preempt employers' state common law claims to recoup overcompensation.

We must first determine whether certain LHWCA provisions constitute express preemption provisions. Under *Cipollone*, when an act contains express preemption provisions and those provisions are silent with regard to a specific area of state action, the provision is viewed literally: it is assumed that Congress considered the issue and decided

---

[3]The director of the Office of Workers' Compensation Programs, a division of the United States Department of Labor, submitted an amicus brief.

against preempting that action. The preemption inquiry goes no further than the express preemption clause. When an act does not include an express statement of preemption, however, the court does not engage in a *Cipollone* analysis and instead employs a traditional preemption analysis.

Stevedoring argues that the LHWCA contains two preemption clauses, sections 905(a) and 933(i). Section 905, titled "Exclusiveness of liability", provides in relevant part, "[t]he liability of an employer prescribed in section 904 . . . shall be exclusive and in place of all other liability of such employer to the employee . . . at law or in admiralty[.]" 33 U.S.C. § 905(a). Section 933(i), addressing the right to compensation as exclusive remedy when third persons are liable, provides, "[t]he right to compensation or benefits under this chapter shall be the exclusive remedy to an employee when he is injured[.]" 33 U.S.C. § 933(i). These sections do not preempt the current action, Stevedoring reasons, because they extend only to remedies of the *employee* against the employer and not to actions by the *employer* against the employee.

■ Stevedoring further contends that federal case law recognizes sections 905(a) and 933(i) as preemption clauses. However, the cases Stevedoring presents in support of this argument do not specifically label these sections as preemption clauses; they merely find that these sections have a preemptive effect. *See, e.g., Perron v. Bell Maintenance & Fabricators, Inc.*, 970 F.2d 1409 (5th Cir. 1992), *cert. denied*, 507 U.S. 913, 122 L. Ed. 2d 660, 113 S. Ct. 1264 (1993); *Eagle-Picher Indus., Inc. v. United States*, 937 F.2d 625, 637-38 (D.C. Cir. 1991); *McCarthy v. Department of Social & Health Servs.*, 110 Wn.2d 812, 759 P.2d 351 (1988) (discussing Washington Industrial Insurance Act's exclusive remedy provisions). Although a statutory provision that expressly denies a cause of action to some plaintiffs may not be distinguishable in function from a preemption clause, such a provision may preempt state law without automatically qualifying as an express preemption clause.

Amicus convincingly counters that sections 905(a) and 933(i) constitute exclusive remedy provisions instead of preemption clauses. Amicus argues that because these clauses do not preempt otherwise applicable state law, such as state workers' compensation statutes, they do not function as express preemption clauses. *See Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 65 L. Ed. 2d 458, 100 S. Ct. 2432 (1980) (holds coverage of LHWCA and state workers' compensation law is overlapping and concurrent). Further, amicus notes, the LHWCA calls for the exclusion of both federal and state common law employee remedies, without focusing on state law.

We find that Congress intended the sections advanced by Stevedoring to be exclusive remedy clauses and not express preemption clauses. These sections, unlike statutory provisions that courts have found to be express congressional statements on preemption, do not mention preemption or state law.[4] *Cf. Cipollone*, 112 S. Ct. at 2628, 2625 (clause at issue was entitled preemption but did not mention state law); *Draper v. Chiapuzio*, 9 F.3d 1391, 1393 (9th Cir. 1993) (clause announced, "this section do[es] not preempt any State or local law requirement"). In addition, as amicus argued, the LHWCA provisions do not exclude all state law remedies; neither were they enacted to exclude state common law claims specifically. Moreover, section 905(a) may actually work against Stevedoring's position since, when viewed with the LHWCA as a whole, it suggests an intent to expressly preempt the field of controversies between employer and employee regarding compensation for industrial injuries.

Because we find that the LHWCA does not contain any express preemption clauses, we do not undertake a *Cipollone* analysis and instead turn to a traditional preemption analysis. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 120 L. Ed. 2d 407, 112 S. Ct. 2608 (1992). The LHWCA does not expressly provide for or prohibit repayment of overcompensation. *See Stevedoring Servs. of Am., Inc. v. Eggert*, 953 F.2d

---

[4] "State law" includes common law, statutes, and regulations. *Cipollone*, at 112 S. Ct. 2620.

552 (9th Cir.), *cert. denied*, 504 U.S. 1230, 120 L. Ed. 2d 922, 112 S. Ct. 3056 (1992) (*Eggert* I); *Ceres Gulf v. Cooper*, 957 F.2d 1199 (5th Cir. 1992). We must therefore look to the structure and purpose of the statute to discover preemptive intent. *Cipollone*, 112 S. Ct. at 2617 (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 51 L. Ed. 2d 604, 97 S. Ct. 1305 (1977)). After review of relevant LHWCA provisions, we find that Congress intended to occupy the field of payments between the employer and employee.

Eggert and amicus argue that Stevedoring's claims venture into the field occupied by Congress and are thus preempted. In support of his preemption argument, Eggert relies mainly on the related federal case, *Eggert* I. In that case, the Ninth Circuit reviewed three LHWCA provisions,[5] which address payments in excess of what is later determined to be the employer's liability, to ascertain whether or not Stevedoring had an implied federal cause of action under the LHWCA. The court held that "the Act does regulate the ability of employers to recoup alleged overcompensation from claimants", and that, since "Congress has not been silent" on this subject, there is no implied federal cause of action under the act for repayment of benefits. *Eggert* I, at 556.

Eggert relies on two other decisions concerning overpayment, *Ceres Gulf v. Cooper, supra*, and *Holcombe v. Alabama Dry Dock & Shipbuilding Corp.*, 602 So. 2d 400 (Ala. 1992), *cert. denied*, 506 U.S. 1050, 122 L. Ed. 2d 126, 113 S. Ct. 971 (1993). In *Ceres Gulf*, an administrative law judge denied the employer's request for reimbursement of overpayment, ruling that reimbursement is available under the LHWCA only if future benefit payments are contemplated. The Benefits Review Board affirmed. Instead of appealing to the federal Court of Appeals as the LHWCA allows, the employer brought a separate action in federal district court for reimbursement. The district court held that it had jurisdiction and that the employer was entitled to reimbursement. As in *Eggert* I, the

---

[5]33 U.S.C. §§ 914(j), 922, 908(j).

Fifth Circuit reversed, holding that the LHWCA provided no federal right of action to recover payments wrongfully obtained, such as through fraud, when no future compensation is contemplated. *Ceres Gulf*, at 1206-07.

The court in *Ceres Gulf* rejected the employer's argument that the district court had general federal question jurisdiction, declaring that such jurisdiction is unavailable "where, as here, Congress has created a specific, statutorily-defined scheme that clearly supplants the general jurisdictional statute." *Ceres Gulf*, at 1208. The company's suit, the court said, was "an impermissible end run around the LHWCA". *Ceres Gulf*, at 1209. Allowing the separate action "would run counter not only to the express provisions of the LHWCA . . . but also to the underlying purpose of the Act." *Ceres Gulf*, at 1209.

> To allow this separate action, we would have to ignore the compromise effected by the exclusivity aspects of the LHWCA, under which the employee is barred from suing the employer, in exchange for more prompt and certain, although possibly lower, recovery. The LHWCA precludes the employee's suit, yet Ceres Gulf seeks to hale the employee into federal court because of a claimed gap in the LHWCA, concerning recovery of wrongful advance payments. The cure lies with Congress, not federal courts.

(Footnote omitted.) *Ceres Gulf*, at 1209.

Eggert also relies on *Holcombe v. Alabama Dry Dock & Shipbuilding Corp., supra.* In *Holcombe*, the trial court had allowed the maritime employer to recover overpayment, made under the LHWCA, pursuant to state common law theories. Relying on *Eggert I* and *Ceres Gulf*, the Alabama Supreme Court reversed, holding that the remedies provided under the act are exclusive of state common law remedies. The court concluded that, "[i]n the wake of the federal appellate courts' refusal to rewrite or supplement the LHWCA, this Court cannot allow ADDSCO's summary judgment to stand on state common law theories of recovery." *Holcombe*, at 403.[6]

---

[6]Stevedoring notes that, although *Holcombe* appears to support Eggert's position, it is debatable whether the holding of that case necessarily follows from the

Stevedoring urges us to find that no federal preemption occurs because other federal cases have found remedies to exist outside the terms of the LHWCA. This argument is misleading. The LHWCA addresses the rights and obligations between an employer and an employee. *See Ceres Gulf,* at 1207-08 (quoting *Federal Marine Terminals, Inc. v. Burnside Shipping Co.,* 394 U.S. 404, 413, 22 L. Ed. 2d 371, 89 S. Ct. 1144 (1969)). In contrast, the cases advanced by Stevedoring provide remedies in situations involving different relationships and therefore do not apply to the present analysis. *See Federal Marine Terminals* (employer's claim against negligent shipowner); *Phillips v. Marine Concrete Structures, Inc.,* 877 F.2d 1231 (5th Cir. 1989) (employer's claim against employee's recovery from third party), *vacated on rehearing,* 895 F.2d 1033 (5th Cir. 1990); *Allen v. Texaco, Inc.,* 510 F.2d 977 (5th Cir. 1975) (employer's claim against employee's payments from third party).

The reasoning of both *Eggert* I and *Ceres Gulf* applies to the present question of federal preemption. Both decisions imply that Congress intended the statutory remedies for recovery of overpayment to be exclusive. If that is so, Congress has occupied that field to the exclusion of any state common law remedies. After a review of relevant LHWCA provisions, we conclude that Congress intended the act to be the sole and exclusive avenue to address any issues that arise in the relationship between the employee and employer. Thus, the LHWCA occupies the field by governing all aspects of that relationship, including recoupment of overpayment by an employer.

---

federal decisions. The precise holding of both *Eggert* I and *Ceres Gulf* is that no implied *federal* cause of action exists for recovery of overpayment under the LHWCA. Those decisions are not based on principles of preemption but rather on the notion that, when a federal statute expressly provides a remedy, no other federal remedy will be implied. In *Eggert* I, the court expressly declined to decide the issue of preemption of state law remedies, noting that "[w]hether there can be a state common law claim for recovery of alleged overpayments of disability compensation under the LHWCA is an open question in Washington". *Eggert* I, at 558 n.7. The Ninth Circuit continued, in dicta, "it appears likely that Congress has expressed its intent to preempt state common law claims by employers against claimants for *repayment* of alleged overpayments of disability compensation." *Eggert* I, at 558 n.7. After fully analyzing the preemption issue, we agree with the conclusion reached by the Alabama court, although upon different reasoning.

Section 914(j) grants the employer credit for prior payments against any future compensation due. 33 U.S.C. § 914(j). The Ninth Circuit found that this section demonstrates "congressional recognition that there might not be 'any' unpaid installment to recover." *Stevedoring Servs. of Am., Inc. v. Eggert*, 953 F.2d 552, 556 (9th Cir.), *cert. denied*, 506 U.S. 1230, 120 L. Ed. 2d 922, 112 S. Ct. 3056 (1992) (*Eggert* I). Section 922 allows an ALJ to modify a compensation order and specifically provides that the new order must not affect any compensation previously paid. 33 U.S.C. § 922. This section also grants credit for compensation paid only to offset unpaid but owing compensation. Under section 908(j), an employee forfeits his right to compensation for any period during which he fails to file an earnings report or he omits or understates his earnings. 33 U.S.C. § 908(j). Any forfeited compensation that the employer has already paid is credited, again only against compensation payable. The Ninth Circuit found that this provision "clearly does not authorize an action against the claimant for repayment[.]" *Eggert* I, at 557. As that court noted, section 908(j) anticipates the situation the ALJ found in the present case, failure to report income, yet does not provide a remedy to an employer who owes no further compensation to the employee. *Eggert* I, at 557.

Congress further addressed this situation. An employee may be found guilty of a felony, subject to a fine or imprisonment, for knowingly and willfully making a false statement for the purpose of obtaining a benefit under the LHWCA. 33 U.S.C. § 931(a)(1). This penalty does not include repayment of compensation paid pursuant to the false representation. In addition, an employer may discharge an employee who has been adjudicated to have filed a fraudulent claim for benefits. 33 U.S.C. § 948a. *See also Ceres Gulf v. Cooper*, 957 F.2d 1199, 1205-06 (5th Cir. 1992).

We conclude that these sections, viewed together, demonstrate Congress's intent to occupy the field of employer remedies for overpayment of compensation under the LHWCA, including payments based on employee fraud. This is admit-

tedly a harsh result. Because its claims are preempted, Stevedoring, an employer who paid substantial sums to an employee based on fraudulent information, remains without a remedy to recover. However, relief lies with Congress, who has not allowed an employer relief in this area as of yet.[7] Accordingly, we find that the LHWCA preempts Stevedoring's state common law claims for repayment of overcompensation.

Because we find that Stevedoring's claims are preempted by the LHWCA, we need not address the argument that the doctrines of res judicata and collateral estoppel bar Stevedoring from seeking an order of repayment.

Because Stevedoring does not prevail on appeal, its request for attorney fees is denied.

We reverse the order of summary judgment and dismiss.

WEBSTER and BECKER, JJ., concur.

Review granted at 126 Wn.2d 1022 (1995).

---

[7]It is worth noting that, when Congress has wished to allow for the recovery of overpayment of federal benefits under state law, it has expressly done so. For instance, when an overpayment of aid to families with dependent children has been made to an individual who is no longer receiving aid, "recovery shall be made by appropriate action under State law against the income or resources of the individual or the family[.]" 42 U.S.C. § 602(a)(22)(B).